AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
JUL 2 2 2016
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung Galaxy S5, associated with no.619-348-0798, SM-G900T, located at FBI Evidence Control Room, 10385 Vista Sorrento Pkwy, San Diego, CA 92121

Case No. '16MJ2154

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 956, 1117, 1119, 1341, 2261, 2314 | foreign murder of US national, conspiracy to do the same, mail fraud, interstate/foreign domestic violence, transportation of stolen goods |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days (give exact ending date if more than 30 days: ____________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

FBI Special Agent Eric Van Houten
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/22/16

[signature]
*Judge's signature*

City and state: San Diego, CA

Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

X6735
07/22/16

# AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

1. I, Special Agent Eric Van Houten, being duly sworn, hereby state as follows:

2. I am a special Agent of the Federal Bureau of Investigation ("FBI") and have been employed as such since 2014. Since November 2014, I have been assigned to the FBI's Violent Crime squad in San Diego where I have both conducted and assisted in criminal investigations to include bank robberies, extortions, assaults against federal officers, and kidnappings. Between May 2008 and June 2014, I served as an Intelligence Analyst for the FBI. I hold a Bachelor of Arts degree from Purdue University with majors in Political Science and Communications with specializations in International and Public Relations and a minor in Forensic Science.

3. During my career with the FBI, I have conducted arrests, search warrants, and physical and electronic surveillance. Through my formal education and law enforcement career, I have completed training in forensic science and learned the evidentiary value of that evidence as it relates to violent crime and other criminal offenses (to include the processing of violent crime scenes and the collection of trace evidence).

4. I have spoken with other agents, as well as other law enforcement officers with experience in violent crime investigations about their experiences and the results of their investigations and interviews. Through these discussions and through my own training and experience, I know that cellular telephones and other electronic devices, to include smart phones, are frequently used to facilitate criminal activity. In many instances, cellular telephones and smart phones are used to facilitate communication between co-conspirators through traditional audio conversations, text messages, emails, and other electronic applications. Records of these communications are often stored on the devices and may not be accessed through records obtained from service providers.

5. I am also aware that violent offenders often have electronic documents and files, which were used to aide and facilitate the commission of the crime. In many instances, these files can contain additional forensic and transactional evidence linking the subject to the victim and/or the identification of other co-conspirators. In addition, violent offenders often attempt to conceal, dispose of, or destroy evidence linking them to the crime scene and/or the victim.

6. Through training and conversations with other special agents and experts, I have learned location and/or GPS information can be electronically stored on a cellular phone and extracted for analysis. This information is relevant in violent crime investigations as this information can indicate times a particular

phone was at specific place, which can corroborate or disprove a suspect's statements regarding his/her location.

7. This affidavit is offered as follow-up to previous search warrant 15MJ1718. Search warrant 15MJ1718 was executed on June 4, 2015, to search a studio apartment located at 30 27th Street San Diego, California 92102, and download and search forensic evidence seized from that location.

8. My experience as a Special Agent, my participation in the investigation of violent crimes, my conversations with other agents, and other state and local law enforcement officers familiar with violent crimes, as well as my education and training, form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein. Since this affidavit is being submitted for the limited purpose of securing a search warrant on a previously seized item, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 18, United States Code §§ 1001, 1117, 1118, 1512, 2314 and 2261, is located on the item described in Attachment B. The discussions included herein are set forth in substance and not verbatim, unless otherwise noted.

//

//

## FACTS SUPPORTING PROBABLE CAUSE

9. On May 2, 2015, United States citizen Jake Clyde MERENDINO (DOB: 09/22/63) was found dead in Baja California Norte, Mexico on the highway between Rosarito and Ensenada at kilometer 48.7, near a location known as Los Arenales. MERENDINO's vehicle, a Range Rover registered to him and bearing Texas license plate FPJ6119, was found near his body.[1]

10. On May 11, 2015, Henk TYSMA, owner of California Baja Rent-a-Car in Spring Valley, California, established telephonic contact with the U.S. consulate in Tijuana, Mexico, after seeing a news piece on the MERENDINO homicide. MERENDINO, a United States Citizen and former resident of Beaumont, Texas, had been a long time customer at TYSMA's rental car company and would frequently rent cars to drive down to Mexico, where he was planning on retiring. TYSMA also established telephonic contact with FBI San Diego on May 11, 2015, to report MERENDINO's death.

11. TYSMA reported that MERENDINO arrived at California Baja Rent-a-Car in Spring Valley on April 29, 2015, at approximately 10:00 am with United

[1] MERENDINO's body was found approximately 10 meters from his Range Rover in a small valley with blood evidence located approximately 3 meters from the vehicle. Mexican law enforcement officials assessed that the initial confrontation occurred in the driver's seat of the vehicle, and continued outside to the rear of the vehicle, where a major confrontation occurred approximately 2-3 meters behind the vehicle, and MERENDINO was stabbed approximately 20 times in the chest and suffered multiple slash wounds across the neck. Mexican law enforcement officials have not yet located a murder weapon.

States Citizen David Enrique MEZA (DOB: 06/13/90). The two rented a 2013 Ford Explorer bearing California license plate 7AOM662 and left in both the rental car and MERENDINO's Range Rover.

12. It is my understanding that MERENDINO and MEZA met on-line in July 2013 and thereafter entered into a consensual romantic relationship. At the time they met, MERENDINO lived in Texas and MEZA in San Diego.

13. On April 29, 2015, MERENDINO and MEZA travelled south into Mexico in order for MERENDINO to complete the purchase of a $300,000 condominium at Palacio del Mar, at kilometer 50 ½ on the highway between Rosarito and Ensenada. MERENDINO and MEZA crossed back into the U.S. on April 29, 2015, at 2:45 pm[2] and checked into the Hercor Hotel, 692 H Street, Chula Vista, California.

14. On May 1, 2015, MERENDINO and MEZA checked out of the Hercor Hotel in Chula Vista, California and returned the rental car at approximately 12:13 pm. After returning the rental car in Spring Valley, MERENDINO and MEZA both left the rental car agency in MERENDINO's Range Rover and returned to Mexico, MERENDINO in his Range Rover and MEZA on MEZA's motorcycle. At 1:00 pm, MERENDINO in his Range Rover and MEZA on MEZA's

[2] All border crossings from Mexico into the United States referenced herein are based on official entries in the Treasury Enforcement Communications System (TECS), a database utilized by the U.S. Customs and Border Protection Agency.

motorcycle were photographed passing through the Playas de Tijuana toll booth, which is the route from San Diego to Rosarito. MERENDINO was wearing a dark short-sleeve shirt with a light-colored stripe on the sleeve, and MEZA was wearing a red helmet, a black leather jacket and blue jeans. At 1:15 pm, MEZA drove through the Rosarito toll booth wearing the same red helmet, black leather jacket and jeans. MEZA was followed by MERENDINO at 1:16 pm, wearing the same shirt and driving the Range Rover.

15. As the condominium at Palacio del Mar was not yet habitable, MERENDINO and MEZA rented a room together at Bobby's By The Sea, located near kilometer 43 on the highway between Rosarito and Ensenada, Mexico. They checked in at approximately 3:36 pm on May 1, 2015. MERENDINO appeared in the lobby between 7:00 pm and 8:00 pm to open a bottle of wine. At approximately 10:30 pm, a motorcycle was heard departing the hotel. At 11:01 pm, MEZA entered the U.S. on MEZA's motorcycle bearing California license plate 22J6784.

16. On May 2, 2015, at around 1:00 am, hotel security observed MERENDINO departing the hotel in his Range Rover. MERENDINO told the security guard that he was going to help a friend stranded on the road. At approximately 3:33 am, MERENDINO's body was found on the highway between Rosarito and Ensenada, five minutes from Bobby's By The Sea. MERENDINO

was still wearing the dark-colored short-sleeve t-shirt with a light-colored stripe on the sleeve.

17. On May 2, 2015, at 3:57 am, MEZA crossed into the U.S. on MEZA's motorcycle. MEZA's pregnant girlfriend, Taylor Marie LANGSTON (DOB: 07/06/95), crossed into the U.S. twenty-five minutes later at 4:22 am in a black Sport Utility Vehicle with no license plates. I believe that this black SUV with no license plate is MEZA's SUV and suspect that the plates were removed to disguise the identity of the registered owner of the SUV (MEZA).

18. At approximately 7:00 pm on May 2, 2015, according to hotel staff, MEZA and LANGSTON returned to the hotel in a black SUV without license plates --which I again believe to be MEZA's SUV-- and picked up a number of personal items from the room at Bobby's By The Sea, where MERENDINO and MEZA had been staying.

19. Mexican officials reported to the FBI that MERENDINO's iPhone, iPad, laptop computer and $15,000 diamond-studded Rolex watch were missing. They were not found on MERENDINO's body, in the hotel room at Bobby's By The Sea or in MERENDINO's condominium.

20. On May 3, 2015, at 12:55 am, MEZA and LANGSTON crossed into the U.S. in MEZA's SUV, this time bearing plate number CA 7KSW212. MEZA's

SUV, with California license plate 7KSW212, is assigned to a 2012 Hyundai Tucson SUV registered to MEZA at 1309 Pequena Street, San Diego, CA 92154. MEZA's parents live at this address.

21. Mexican law enforcement officials investigating MERENDINO's death identified Boston-based attorney Carron HAIGHT as a close friend of MERENDINO's who had drawn up MERENDINO's Last Will and Testament in 1998 ("1998 Will") when they were both residing in Texas.

22. HAIGHT confirmed that she had been close friends with MERENDINO since the late 1990s. HAIGHT also reported that she had been named Executrix of MERENDINO's 1998 Will and had filed an Application for Probate and Letters Testamentary on May 8, 2015, in Galveston, Texas.

23. An associate of MEZA's in Mexico showed Mexican law enforcement officials a holographic will alleged to be handwritten and executed by MERENDINO on December 12, 2014 on Hercor Hotel letterhead in Chula Vista, California, which named MEZA sole heir and beneficiary of MERENDINO's estate ("2014 Will').

24. On May 12, 2015, MEZA and LANGSTON were observed at the United Parcel Service ("UPS") office located on Market Street in San Diego, California sending a copy of the 2014 Will to HAIGHT in Boston.

25. On May 17, 2015, MEZA filed an Original Answer and Contest in the Probate Court of Galveston County, Texas contesting the 1998 Will filed by HAIGHT and filing the 2014 Will.

26. On December 22, 2015, a Grand Jury in the United States District Court, Southern District of California indicted both MEZA and LANGSTON for Interstate or Foreign Domestic Violence Resulting in Murder, in violation of Title 18, U.S.C. Sec. 2261(a)(1) (MEZA); Conspiracy to Obstruct Justice, in violation of Title 18, U.S.C. Sec. 1512(k) (MEZA and LANGSTON); Obstruction of Justice, I violation of Title 18, U.S.C. Sec. 1512(c)(2) (LANGSTON); and False Statement to a Federal Officer, in violation of Title 18, U.S.C. Sec. 1001 (LANGSTON). Also on Tuesday, December 22, 2015, the Court issued arrest warrants for MEZA and LANGSTON.

27. On December 23, 2015, MEZA and LANGSTON were arrested and taken into custody at their Imperial Beach apartment without incident.

28. During the search of MEZA's studio apartment on June 4, 2015, agents found a Samsung Galaxy S5 cell phone (MEZA's Phone). It was seized pursuant to the warrant and MEZA later identified it as his phone.

29. My squad-mate, FBI Special Agent Benjamin Inman, downloaded MEZA's Phone, consistent with the dictates of search warrants 15MJ1718, using Cellebrite technology. The time limitations of that search warrant have lapsed.

30. The San Diego Regional Computer Forensics Laboratory (RCFL) makes highly trained digital forensic examiners available to support federal, state, and local investigations in the San Diego area through impartial and objective analysis of digital evidence.

31. In recent conversations with RCFL experts, I have been told that the RCFL has additional tools beyond Cellebrite, which would likely identify and extract additional information stored on Meza's Phone. Although the original forensic analysis using Cellebrite provided relevant investigative material, RCFL experts have informed me that a Cellebrite search alone does not provide an in-depth analysis of all of the information forensically available from MEZA's Phone. For example, Cellebrite may not capture all of the items deleted from a phone. Data deleted from phones has the potential to be recovered upon deeper examination by trained forensic experts. Deleted data, in many instances, remains in the phone's storage, waiting to be overwritten by new data being stored to the device. RCFL has agreed to assist me with searching MEZA's Phone for additional information concerning the May 2, 2015 murder and events surrounding that murder.

32. I am therefore requesting a warrant, so an RCFL expert can forensically enter MEZA's Phone and identify records, evidence, fruits and instrumentalities, both present and deleted, relating to violations of Title 18, United States Code, §§ 1001, 1117, 1118, 1512, 2314, and 2261, as more fully detailed in Attachment B.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION ON CELL PHONES

33. It is not possible to determine the nature and types of services to which the device is subscribed and the nature of the data stored on the device until one accesses the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of

the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

34. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

35. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

36. In conclusion, based upon the information contained in this affidavit, I have reason to believe that applications, communications, contacts, and location/GPS information contained in MEZA's Samsung Galaxy S5 may constitute relevant records, evidence, fruits and instrumentalities relating to violations of Title 18, United States Code, §§ 1001, 1117, 1118, 1512, 2314,and 2261.

Special Agent Eric Van Houten, FBI

Subscribed and sworn to before me
this 22nd day of July, 2016.

KAREN S. CRAWFORD
United States Magistrate Judge

## ATTACHMENT A

The item to be searched is a Samsung Galaxy S5, associated with no.619-348-0798, SM-G900T, IMEI 351881068628864, S/N: RV8F90NJNQE, located at the FBI Evidence Control Room, 10385 Vista Sorrento Parkway, San Diego, CA 92121.

## ATTACHMENT B

Authorization is sought to search for and seize evidence that relates to the violation of 18 USC Sections §§ 1001, 1117, 1118, 1512, 2314 and 2261. Specifically, all evidence:

a. tending to indicate efforts to coordinate meetings in and around the date of the offenses, efforts to conspire to commit the offenses, or efforts to cover up the offenses thereafter,

b. providing links between MEZA, LANGSTON and MERENDINO;

c. tending to identify co-conspirators, criminal associates, or others involved in planning or committing the offenses listed above, concealing or covering up the offenses, or otherwise reflecting involvement in the offenses listed above;

d. tending to identify travel to or presence at locations relevant to these offenses;

e. tending to identify the user of, or persons with control over or access to, the subject electronic item; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

This authorization includes the search of electronic data to include deleted data, remnant data and slack space. The search of this cell phone will be conducted in accordance with the "Procedures For Electronically Stored Information" provided in the affidavit submitted in support of this warrant.